UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON HOOKER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STEPHANIE CLENDENIN, *et al.*,<br><br>　　　　　Defendants. | No. 1:23-cv-00969-EPG (PC)<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE<br><br>AND<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS THIS ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 8)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

　　　　Plaintiff Cameron Hooker appears to be a pre-adjudication civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff challenges the California regulation that prohibits internet usage for certain detained individuals on the ground that it violates his First Amendment rights. (ECF No. 8 at 3, 7). The Court previously screened Plaintiff's complaint and found that it failed to state any cognizable claims, and gave Plaintiff leave to amend. (ECF No. 7). Plaintiff filed a First Amended Complaint (FAC) on September 5, 2023 (ECF No. 8), which now is before the Court for screening.

　　　　The Court has reviewed Plaintiff's FAC, and for the reasons described in this order, will recommend that this action be dismissed for failure to state a claim.

　　　　Plaintiff has thirty days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court screens the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).[1]

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v.* Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff's FAC (ECF No. 8) alleges as follows:

Plaintiff's only claim is for violation of his freedom of speech under the First Amendment. (*Id.* at 3). Plaintiff alleges that he is a pretrial detainee housed at Coalinga State Hospital (CSH-C). He is pending trial under the SVPA, Cal. Wel. & Inst. Code (WIC) § 6600 et seq. Plaintiff was convicted of kidnapping and raping an adult woman. Plaintiff does not have any convictions,

---

[1] Plaintiff states that he is civilly detained under California's Sexually Violent Predators Act ("SVPA"). (ECF No. 8 at 3). Given this representation, the Court concludes that the screening requirements of 28 U.S.C. § 1915A, which govern "prisoners," do not apply here. *See Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000) (concluding that a person civilly committed under California's Sexually Violent Predators Act was not a "prisoner" under the Prison Litigation Reform Act).

2

allegations, or interest in children. Plaintiff has never used the internet to break the law, stalk anyone, mislead anyone, or misrepresent himself.

Plaintiff claims that his right to free speech is being violated by his institution's ban on the following: phones, e-mail, twitter, online SOTP programs, online general and legal research, online support networks and social connections, online information, online banking access, and in general online activities. (ECF No. 8 at 3). Plaintiff alleges that, without a forum for speech, he and other patients are forgotten and "we have no way to shout to the public and let them know the hopelessness of our plight." (*Id.* at 5). Plaintiff alleges that several prisons and county jails have started pilot programs testing tablets that can make phone calls and video calls. (*Id.*) Plaintiff also suggests other alternatives such as providing Plaintiff with a machine that fits his needs and is equipped with spyware "to keep an eye" on his activities; using a computer under direct supervision; and installing kiosk machines in the units for patients' use. (*Id.* at 6). Plaintiff states that "[t]he possibilities go on and on." (*Id.*)

Plaintiff requests injunctive relief by striking down California Code of Regulations, Title 9, Division 1, Chapter 4.5, Article 3, section 891, which states: "Non-LPS[2] patients shall not have access to the internet," and section 4350(a)-(b) regarding restrictions on devices that can access the internet. (*Id.* at 7).

### III. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[2] "'Non-LPS' means that the placement in or commitment to the facility is pursuant to legal authority other than the Lanterman-Petris-Short (LPS) Act, commencing with Section 5000, of Part 1, Division 5 of the Welfare and Institutions Code." Cal. Code Regs. tit. 9, § 881(o). The LPS Act "governs involuntary treatment of the mentally ill in California." *In re Conservatorship & Estate of George H.*, 169 Cal. App. 4th 157, 159 (2008).

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional

4

violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B.     Evaluation of Plaintiff's First Amendment Claim**

Plaintiff challenges the California Regulation stating, "Non-LPS patients shall not have access to the Internet," Cal. Code Regs., tit. 9, § 891, and section 4350, which prohibits patients in the custody of state hospitals from possessing electronic devises with the capability to connect to a wired or wireless communications network or that can be modified for network communication. (ECF No. 8 at 7). The LPS Act governs involuntary treatment of the mentally ill in California. *In re Conservatorship & Estate of* George *H*., 169 Cal. App. 4th 157, 159 (2008). In contrast, the SVPA targets "a small but extremely dangerous group of sexually violent predators [SVP] that have diagnosable mental disorders [who] can be identified while they are incarcerated." *Cooley v. Superior Court*, 29 Cal. 4th 228, 253 (2002), *as modified* (Jan. 15, 2003).

To be determined to be an SVP, the detainee must have been convicted of a sexually violent offense and have a diagnosed mental disorder that makes it "likely that he . . . will engage in sexually violent criminal behavior." WIC § 6600(a)(1). Sexually violent offenses include such acts as rape, spousal rape, aggravated sexual assault of a child, sodomy, lewd or lascivious acts involving children, oral copulation, continuous sexual abuse of a child and penetration by

1  a foreign object or kidnaping or assault with the intent to commit one of these other crimes. WIC

2  § 6000(b). The sexually violent act must have been committed "by force, violence, duress,

3  menace, fear of immediate and unlawful bodily injury on the victim or another person, or

4  threatening to retaliate in the future against the victim or any other person. . . ." *Id*.

5        Courts have determined that many restrictions on SVPs that are akin to those imposed on

6  prisoners, are appropriate due to safety concerns. *Telucci v. Withrow*, No. 1:16-cv-0025-JLT,

7  2016 WL 2930629, at *2 (E.D. Cal. May 19, 2016) (collecting cases). Restrictions imposed on

8  SVPs need not be the least intrusive or those that the court agrees with as long as they advance a

9  legitimate interest of the hospital. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1046 (9th Cir. 2002)

10 (*citing Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ("Such considerations are peculiarly within the

11 province and professional expertise of corrections officials" as long as the determinations are not

12 an exaggerated response to the considerations.).

13       Therefore, as an SVP, Plaintiff is not entitled to full constitutional rights, including full

14 First Amendment rights. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). "[I]f a particular

15 condition or restriction of pretrial detention is reasonably related to a legitimate governmental

16 objective, it does not, without more, amount to 'punishment.'" *Valdez*, 302 F.3d at 1046 (quoting

   *Bell*, 441 U.S. at 539).

17       Courts have routinely held that the regulations challenged by Plaintiff, which restrict

18 internet use, do not violate the SVP detainee's constitutional rights because they are reasonably

19 related to legitimate government interests. *See, e.g.*, *Allen v. King*, 741 F. App'x 463, 464 (9th

20 Cir. 2018) (holding that Coalinga had legitimate interest in preventing illicit activity, such as

21 accessing or sharing child pornography and that "Section 4350's ban on patients' personal

22 possession of wireless-capable electronic devices is reasonably related to [the] legitimate interest

23 in preventing patients from using such devices for illicit purposes."); *Bodnar v. Clendenin*, No.

24 2:22-CV-1533 AC P, 2023 WL 3077653, at *4 (E.D. Cal. Apr. 25, 2023) (holding that "the denial

25 of internet access and internet capable devices does not support a cognizable claim"); *Johanneck

26 v. Ahlin*, No. 1:18-cv-0051 LJO MJS, 2018 WL 1014454, at *8 (E.D. Cal. Feb. 21, 2018) (no

27 cognizable claim for internet access); *Gould v. Ahlin*, No. 1:18-cv-0076 LJO SAB, 2018 WL

28

1959545, at *9–10 (E.D. Cal. Apr. 25, 2018) (same); *Telucci*, 2016 WL 2930629, at *5–6 (no cognizable claim for internet access or internet capable devices).

With these legal standards in mind, FAC fails to state a claim for violation of the First Amendment. Assuming at least some of the activities requiring internet that FAC identifies fall within Plaintiff's First Amendment rights, Plaintiff fails to establish that restrictions on them are not reasonably related to legitimate government interests and are therefore unconstitutional.

In promulgating amendments to § 4350 and restricting accessing to the internet and certain electronic devices, Department of State Hospitals (DSH) has asserted that, beyond concerns about access, exchange and/or profit from illegal materials, including child pornography, the regulations were necessary because:

> [A]ccess to the internet provides full access to illegal materials, aerial views of DSH facilities, communication with victims, communication to create additional victims, and the ability to download illicit images for sale or sharing with other patients. . . . This internet access creates danger for the public, the staff, and patients, as well as interferes with treatment by creating exposures, triggers, and temptations that are intended to be controlled in a secured inpatient mental health setting.

*Williams v. Price*, No. 1:18-cv-00102-LJO-MJS PC, 2018 WL 1184919, at *3 (E.D. Cal. Mar. 7, 2018). DSH also cited concerns about potential copyright infringement and enforcement challenges due to lack of staff. (*Id.*) As described above, courts have found that DSH in general and Coalinga State Hospital, in particular, lawfully restrict the internet for patients detained under the SVPA because of these legitimate government interests.

Finally, even though Plaintiff alleges that he is being denied the right to express himself through the internet, he appears to have other means of communication, including through mail and phone. FAC does not allege that this lawful communication or speech is not allowed by other means.

### IV.   CONCLUSION AND ORDER

The Court recommends that this action be dismissed, without granting Plaintiff further leave to amend. In the Court's prior screening order (ECF No. 7), the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended

7

Complaint with the benefit of the Court's screening order. Thus, it appears that further leave to amend would be futile.

Based on the foregoing, **IT IS ORDERED** that:

1. The Clerk of Court is directed to assign a district judge to this case.

It is further **RECOMMENDED** that:

1. This action be dismissed with prejudice for failure to state a claim; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 25, 2024**                    /s/ Erica P. Grosjean
                                                                    UNITED STATES MAGISTRATE JUDGE

8