UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON HOOKER,<br><br>    Plaintiff,<br><br>  v.<br><br>STEPHANIE CLENDENIN, *et al.*,<br><br>    Defendants. | No. 1:23-cv-00969-KES-EPG (PC)<br><br>ORDER ADOPTING IN PART FINDINGS AND RECOMMENDATIONS TO DISMISS THIS ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM<br><br>Docs. 8, 10 |

Plaintiff Cameron Hooker appears to be a pre-adjudication civil detainee at Coalinga State Hospital.[1]  Doc. 8.  He proceeds pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  *Id.*  Plaintiff challenges a California regulation that prohibits internet usage for certain detained individuals on the ground that it violates the First Amendment.  *Id.* at 3, 7.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

The assigned magistrate judge screened plaintiff's complaint and first amended complaint pursuant to 28 U.S.C. § 1915 and issued findings and recommendations which concluded that

---

[1] The complaint states that plaintiff is a "pretrial detainee housed at Coalinga State Hospital" who is "pending trial under" the Sexually Violent Predator Act ("SVP"), California Welfare and Institutions Code § 6600 et seq. Doc. 8 at 3.  Civil detainees under the California Welfare and Institutions Code § 6600 et seq. are considered civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act.  *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000).  However, the complaint also states that plaintiff "was convicted of [kidnapping] and raping an adult woman." Doc. 8 at 3.  But given that the complaint does not state that plaintiff is still serving a sentence for this conviction, the Court will construe the complaint as alleging that plaintiff was a pre-adjudication civil detainee at the time at issue in the complaint.

1

plaintiff "fails to state a claim for violation of the First Amendment." Doc. 10 at 7. The magistrate judge found that "[r]estrictions imposed on SVP [civil detainees] need not be the least intrusive or those that the court agrees with as long as they advance a legitimate interest of the hospital." *Id.* at 6 (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1046 (9th Cir. 2002)).

Plaintiff's complaint asserts a claim based on the First Amendment. The outcome reached by the findings and recommendations is correct, but the findings and recommendations in part apply the standard applicable to substantive due process challenges to prison regulations that affect pretrial detainees,rather than the standard applicable to First Amendment challenges to such regulations. *See, e.g., id.* at 6 (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1046 (9th Cir. 2002)).[2] The two standards are similar but distinct.

The Due Process Clause of the Fourteenth Amendment provides pretrial detainees with a substantive right "against restrictions that amount to punishment." *Valdez v. Rosenbaum*, 302 F.3d at 1046. "This right is violated if restrictions are 'imposed [on pretrial detainees] for the purpose of punishment.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "There is no constitutional infringement, however, if restrictions are 'but an incident of some other legitimate government purpose.'" *Id.* To show a due process violation, a pretrial detainee must identify the restriction's "punitive intent." *See id.* at 1045.

The First Amendment, on the other hand, protects the right of free speech "within prison walls." *Id.* at 1048. Challenges to prison regulations that restrict this right are evaluated under

---

[2] The findings and recommendations primarily rely on the section of the Ninth Circuit's opinion in *Valdez* that evaluated a substantive due process challenge to a prison regulation restricting a pretrial detainee's telephone use. *See Valdez*, 302 F.3d at 1045–47 (evaluating substantive due process challenge). A different part of the *Valdez* opinion addressed the plaintiff's First Amendment challenge and set out the appropriate standard for such a challenge. *See id.* at 1047–49. The findings and recommendations also cite *Allen v. King*, 741 F. App'x 463 (9th Cir. 2018), which evaluated a substantive due process challenge to a regulation that prohibited SVP civil detainees from possessing electronic devices. In *Allen*, the court specifically noted that the district court had not considered a First Amendment challenge to the same regulation and remanded so that the district court could consider whether to do so. *Id.* at 464 ("[O]ur earlier disposition did not foreclose an amendment on remand to add a First Amendment claim. We therefore vacate the district court's denial of Robinson's motion to amend, and remand so that it may reconsider the motion."). The findings and recommendations also cite *Bodnar v. Clendenin*, No. 2:22-cv-1533 AC P, 2023 WL 3077653, at *4 (E.D. Cal. Apr. 25, 2023), which similarly rejected a substantive due process challenge to the internet restriction.

the standard recognized in *Turner v. Safley*, 428 U.S. 78 (1987). *See Valdez*, 302 F.3d at 1048. Under this standard, "[a] regulation that impinges on [a detainee's] constitutional right 'is valid if it is reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner,* 482 U.S. at 89). "In making the 'reasonableness' inquiry, [a court should] consider the four factors articulated in *Turner:* (1) whether there is a valid, rational connection between the restriction and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether accommodating the asserted constitutional right will have a significant negative impact on prison guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are obvious, easy alternatives to the restriction showing that it is an exaggerated response to prison concerns." *Id.* at 89–90.

Employing this latter standard, the Court reaches the same conclusion reached by the findings and recommendations, because each of *Turner*'s reasonableness factors justifies the regulation. First, as the findings and recommendations explained, Coalinga State Hospital has a "legitimate interest in preventing illicit activity, such as accessing or sharing child pornography and [] 'Section 4350's ban on patients' personal possession of wireless-capable electronic devices is reasonably related to [the] legitimate interest in preventing patients from using such devices for illicit purposes.'" Doc. 8 at 6 (quoting *Allen*, 741 F. App'x at 464). These illicit purposes include

> access to illegal materials, aerial views of DSH facilities, communication with victims, communication to create additional victims, and the ability to download illicit images for sale or sharing with other patients. . . . This internet access creates danger for the public, the staff, and patients, as well as interferes with treatment by creating exposures, triggers, and temptations that are intended to be controlled in a secured inpatient mental health setting.

Doc. 8 at 7 (quoting *Williams v. Price*, No. 1:18-cv-00102-LJO-MJS PC, 2018 WL 1184919, at *3 (E.D. Cal. Mar. 7, 2018)). There is a valid, rational connection between the internet restriction and these legitimate governmental interests.

Second, as the Court explained in *Valdez*, a civil detainee such as plaintiff presumably has "alternative means of exercising his right to communicate with persons outside the prison walls. [Plaintiff] could receive visitors at the [institution] and could send and receive mail." *Valdez*, 302 F.3d at 1049. Also, plaintiff acknowledges that he is allowed to use a telephone, just not a smart phone. *See* Doc. 8 at 3–4. Plaintiff also alleges that the internet restriction prohibits him from

accessing current news and conducting legal research. *Id.* at 4–6. However, he does not allege that he is unable to receive news publications or legal resources via mail, so alternatives are presumably available; it is his burden to show that they are not.

Third, allowing plaintiff internet "access would have required the defendants to allocate additional resources to monitor [or restrict] his [online activity] to ensure that he did not try to" engage in illicit activities. *Valdez*, 302 F.3d at 1049.

"Finally, there [are] no obvious, easy alternatives to the [internet] restriction which would indicate that the restriction was an exaggerated response." *Id.* Plaintiff proposes alternatives similar to ones that *Valdez* characterized as having a significant negative impact on prison authorities and the allocation of prison resources generally, *see id.* at 1049, such as requiring guards to personally monitor his use of the internet, *see* Doc. 8 at 6. With these considerations in mind, plaintiff has not stated a claim under the First Amendment.

On April 24, 2024, plaintiff filed objections to the findings and recommendations. Doc. 11. Plaintiff maintains that the internet restriction is overbroad and contrary to the Supreme Court's decision in *Packingham v. North Carolina*, 582 U.S. 98 (2017). *Packingham* involved a First Amendment challenge to a North Carolina statute that made it a felony for registered sex offenders who had been released from custody to access social media websites. 528 U.S. at 101–06. The Court found that the statute was not narrowly tailored to the goal of preventing registered sex offenders from contacting minors as it denied them all access to the internet. *Id.* at 106–08.

This argument was rejected in *Allen v. Mayberg*, No. 1:06-CV-01801 AWI GSA PC, 2019 WL 1047884, at *9 (E.D. Cal. Mar. 5, 2019). In *Allen*, as here, the plaintiff was an SVP civil detainee at Coalinga State Hospital and claimed that denying him access to the internet violated his First Amendment rights under the standard set out in *Packingham*. *Id.* at *8. *Allen* held that "*Packingham* [is] distinguishable [because] the security risks posed by a confined sexually violent predator . . . [are] not analogous to those of a registered sexual offender on supervised release, determined ready to live in the community." *Id.* at *10. The Court agrees with the analysis in *Allen*.

Pursuant to 28 U.S.C. § 636(b)(1), the Court conducted a de novo review of this action. Having carefully reviewed the matter, including plaintiff's objections, the Court adopts in part the

4

findings and recommendations. The findings and recommendations recommended that plaintiff not be given leave to amend because he was already given one chance to amend his complaint after the magistrate judge screened the complaint and any further amendment would be futile. Doc. 10 at 7–8. While the findings and recommendations did not analyze the *Turner* factors, the magistrate judge's earlier screening order articulated the *Turner* factors, which as discussed above, are the applicable factors for evaluating a First Amendment challenge to prison regulations. *See* Doc. 7 at 5–6. The screening order correctly advised plaintiff of the four *Turner* factors that would govern the evaluation of his amended complaint. Doc 7 at 5–6. Plaintiff attempted to address those factors, as he proposed alternatives to the internet restriction, Doc. 8 at 6, the fourth *Turner* factor. As plaintiff was advised of the correct factors and attempted to address them but has still failed to state a claim, the findings and recommendations' conclusion that further amendment would be futile was correct.

Thus, the Court ORDERS:

1. The findings and recommendations issued on March 25, 2024, Doc. 10, are ADOPTED in part.
2. Plaintiff's first amended complaint, Doc. 8, is DISMISSED without leave to amend.
3. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:  June 12, 2025

_____
UNITED STATES DISTRICT JUDGE

5